UNITED STATED DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JACQUELYN FLYNN, | * | |
| Plaintiff | * | |
| | * | |
| v. | *. | Civil No. |
| | * | |
| CHSPSC, LLC | * | |
| Defendant. | * | |

COMPLAINT

JURY REQUESTED

INJUNCTIVE RELIEF REQUESTED

NOW COMES Plaintiff Jacquelyn Flynn ("Plaintiff" or "Ms. Flynn"), by and through undersigned counsel, and complains against Defendant CHSPSC, LLC ("Defendant" or "CHSPSC"), as follows:

JURISDICTION, VENUE, AND PARTIES

1. This civil action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*, and the Maine Substance Use Testing Act ("SUTA"), 26 M.R.S. §§ 681-690.
2. This Court has personal jurisdiction over Plaintiff's MHRA claims under 5 M.R.S. § 4621 and over Plaintiff's SUTA claim under 26 M.R.S. § 689.
3. Plaintiff Jacquelyn Flynn is a United States citizen who resides in the Town of Greene, Androscoggin County, Maine.
4. At all relevant times, Plaintiff was an applicant for employment and employee within the meaning of the M.R.S. § 4553(3) and 6 M.R.S. § 682(1).
5. Defendant CHSPSC, LLC is a limited liability company that maintains a principal business address at 4000 Meridian Boulevard, Franklin, Tennessee 37067.

6. CHSPSC is a management company that provides services to subsidiary hospital operators and other affiliates within the Community Health Systems family of companies.
7. Community Health Systems provides general hospital and healthcare services through delivery systems in approximately 36 distinct markets across 14 states, including approximately 72 affiliated hospitals with more than 10,000 beds and approximately 1,000 other sites of care.
8. Upon information and belief, CHSPSC and its affiliated enterprise employ approximately 60,000 people.
9. Upon information and belief, CHSPSC employs more than 3,000 employees.
10. At all relevant times, CHSPSC was an "employer" within the meaning of 5 M.R.S. § 4553(4) and 26 M.R.S. § 682(3).
11. CHSPSC recruited Plaintiff in Maine, interviewed her while she was in Maine, offered to employ her in Maine, planned to set up a Maine based office at Plaintiff's residence, directed pre-employment communications into Maine, conditioned Plaintiff's Maine employment on an unlawful substance use test, overrode Plaintiff's patient-physician relationship and Maine law, and issued multiple unlawful directives to the Plaintiff in Maine.
12. CHSPSC also employed another employee in Maine at relevant times, and, on information and belief, set up a Maine based office with that employee, and has engaged in daily business communications with this other employee.
13. The position CHSPSC offered Plaintiff was fully remote. Plaintiff would have performed all or substantially all of her work from her home in Maine.
14. This Court may exercise personal jurisdiction under 14 M.R.S. § 704-A and constitutional due process.
15. The amount in controversy in this matter exceeds $75,000.

16. The parties are citizens of different States.

17. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

18. Venue is proper in the U.S. District Court in Portland, Maine because Plaintiff resides in Androscoggin County and the causes of action accrued, in whole or substantial part, where Plaintiff was located and would have worked.

19. On or about May 27, 2025, Plaintiff timely filed a notarized Charge of Discrimination against CHSPSC with the Maine Human Rights Commission ("MHRC"). The MHRC assigned matter number E25-0213.

20. On August 6, 2026, the MHRC issued Plaintiff a right to sue notice. Plaintiff has satisfied all administrative prerequisites that apply to her MHRA claims. SUTA does not require administrative exhaustion.

## JURY TRIAL REQUESTED

21. Plaintiff requests a trial by jury on all claims and issues for which a jury trial is permitted.

## STATEMENT OF FACTS

22. Plaintiff has trigeminal neuralgia, a chronic neurological condition that causes intense, shock-like facial pain.

23. Without effective treatment, Plaintiff's pain is excruciating.

24. Plaintiff's trigeminal neuralgia and chronic pain substantially limit the functioning of her nervous system and substantially limit major life activities, including sleeping and activities of daily living, when viewed without regard to mitigating measures.

25. Plaintiff underwent surgery to treat and block the pain caused by trigeminal neuralgia.

26. Plaintiff then underwent three additional surgeries because of complications from the first surgery.

27. Despite these surgical treatments, Plaintiff continues to experience chronic pain.

28. Before using medical cannabis, Plaintiff was prescribed potent narcotics and other medications, including fentanyl patches, OxyContin, morphine, and muscle relaxants, to relieve her pain.

29. Since approximately 2015, Plaintiff has used medical cannabis for disability-related reasons under the supervision and recommendation of a medical provider.

30. Plaintiff is and, during the events at issue, was an authorized participant in Maine's Medical Use of Cannabis Program.

31. Medical cannabis alleviates the symptoms of Plaintiff's disability.

32. After Plaintiff began using medical cannabis, she no longer needed to use narcotic pain medications.

33. Plaintiff's medical provider has advised her that tetrahydrocannabinol ("THC"), a cannabinoid in cannabis, is one of the few substances effective in treating the type of pain Plaintiff experiences.

34. Plaintiff's disability is trigeminal neuralgia and chronic pain. Plaintiff does not claim that cannabis use, drug use, addiction, or any substance use disorder is itself a disability.

35. Plaintiff is a qualified individual with a disability within the meaning of the MHRA.

36. In early 2025, CHSPSC recruited Plaintiff for a fully remote Technical Product Analyst position involving data science, analysis, and related technical work.

37. Plaintiff was well qualified for the Technical Product Analyst position.

38. Plaintiff applied to the position and her application reflected that she was a Maine resident.

39. CHSPSC was aware that Plaintiff lived in Maine and would be performing her work in Maine.

40. On information and belief, CHSPSC received applications from persons in other states.

41. With the knowledge that Plaintiff was a Maine resident and would be a Maine based employee, CMSPSC moved forward with recruiting and hiring Plaintiff.

42. As part of the selection process, Plaintiff participated in interviews with Matthew Mergens, Manager of Data Quality and Product Management, Data Intelligence and Business Analytics, and Jeffrey Cuthbert, Senior Director of Information Systems.

43. Mr. Mergens and Mr. Cuthbert were members of the team with which Plaintiff would have worked.

44. The interviews were successful, and CHSPSC selected Plaintiff for the position.

45. On February 25, 2025, CHSPSC issued Plaintiff a formal offer of employment.

46. The position had a base salary of $75,000 per year.

47. Plaintiff verbally accepted the offer on Friday, February 28, 2025.

48. CHSPSC set Plaintiff's start date for March 17, 2025.

49. The offer letter did not contain a choice-of-law clause, a forum-selection clause, or any waiver of Plaintiff's rights under Maine law.

50. Communications from CHSPSC repeatedly confirmed that Plaintiff was hired as an employee at the time she accepted the offer of employment.

51. During the first part of March 2025, Human Resources representatives, including Rachel Harley and Luisa R. Ball, Manager of HR Compliance, contacted Plaintiff about onboarding paperwork and pre-employment process steps.

52. CHSPSC gave Plaintiff a list of testing locations for its mandatory drug screen.

53. CHSPSC initially required Plaintiff to complete the drug screen by Wednesday, March 5, 2025, before 5:00 p.m.

54. March 3, 2025 emails to Plaintiff indicated, “Failure to comply with [CHSPSC’s directive to undergo a substance use test] will subject you to disciplinary actions up to and including termination” and that “As an employee of [CHSPSC], compliance with the

Substance test is a condition of employment", which is further evidence that as of March 3, 2025 that Plaintiff was an employee.

55. On Monday, March 3, 2025, Ms. Ball called Plaintiff in response to an email Plaintiff had sent concerning the location of the testing center.
56. Plaintiff explained that the testing location CHSPSC had made available would require approximately a six-hour round trip from her home.
57. During that call, Ms. Ball attempted to locate a testing center closer to Plaintiff's home.
58. Ms. Ball identified Central Maine Medical Center and Concentra in the Lewiston-Auburn area as possible testing locations.
59. Ms. Ball granted Plaintiff an extension until Friday, March 7, 2025, before 5:00 p.m. to complete the test and stated that she would help Plaintiff find a closer location.
60. Plaintiff did not refuse to submit to a drug screen.
61. During the March 3 call, Plaintiff explained to Ms. Ball, in detail, that she has a disabling health condition controlled by medical cannabis.
62. Plaintiff told Ms. Ball that she was willing to take a drug screen that included cannabis but that she expected the test to be positive for THC because of her medically authorized use.
63. Plaintiff offered to provide documentation from her medical provider verifying that she used medical cannabis to treat her disability.
64. Plaintiff told Ms. Ball that she would not discontinue an effective, medically recommended treatment for her disability merely to produce a negative THC result.
65. Plaintiff made clear that CHSPSC should not require a negative result for THC from her because THC was present as a consequence of medication used to treat her disability.

66. Plaintiff thereby requested a reasonable accommodation: a disability-related exception to CHSPSC's negative-THC screening requirement for her documented, off-duty medical use of cannabis.

67. Plaintiff's request also put CHSPSC on notice that applying a categorical negative-THC requirement to her would discriminate because of disability and the need for accommodation.

68. Ms. Ball told Plaintiff that she would need to consult CHSPSC's legal department before deciding how the company would respond.

69. At the conclusion of the first March 3 conversation, Ms. Ball left Plaintiff with the understanding that CHSPSC had heard her request and might make an exception.

70. Ms. Ball said she would call Plaintiff back after speaking with the legal department.

71. When Ms. Ball called Plaintiff back, her tone and position had changed completely.

72. Ms. Ball told Plaintiff that she had spoken with the legal department and that CHSPSC was "very confident" it was legally entitled to maintain a drug-free workplace.

73. Ms. Ball told Plaintiff that CHSPSC would not hire her if she failed the drug screen because of her use of medical cannabis.

74. Ms. Ball did not ask for the medical documentation Plaintiff had offered.

75. Ms. Ball did not ask when, where, how often, or in what amount Plaintiff used medical cannabis.

76. Ms. Ball did not ask whether Plaintiff's use caused any work impairment, safety concern, or performance issue.

77. Ms. Ball did not discuss any alternative accommodation, verification procedure, non-impairment agreement, modified testing panel, or individualized assessment.

78. Ms. Ball also withdrew the extension to Friday, March 7, 2025, that she had given Plaintiff during the first call.

79. Ms. Ball told Plaintiff that she instead had to complete the test by Wednesday, March 5, 2025.

80. Ms. Ball further told Plaintiff that she was required to travel to New Hampshire to take the test, withdrawing the earlier offer to arrange testing within a reasonable distance of Plaintiff's Maine home.

81. These abrupt changes to the deadline and location followed immediately after Plaintiff disclosed her disability, explained her treatment, and requested accommodation.

82. These changes regarding the terms of Plaintiff’s post-offer hiring process constituted unlawful retaliation.

83. On March 3, 2025, at approximately 2:31 p.m., Corporate Recruiter Lauren Atkins sent Plaintiff an email claiming that Plaintiff had verbally "rescinded" her acceptance of the job offer because she allegedly refused to complete the required drug test.

84. That characterization was false. Plaintiff had expressly stated that she would take the test; she requested only that CHSPSC not disqualify her for a medically explained THC result.

85. CHSPSC, not Plaintiff, ended the hiring process by announcing that Plaintiff would not be hired if she continued her medical treatment, retracting the promised extension and nearby testing option, and treating her accommodation request as a refusal or rescission.

86. At approximately 4:34 p.m. on March 3, Plaintiff responded to Ms. Atkins and stated, in part: "This isn't about my medicine . . . . I could have easily flushed my system . . . . HR process was unprofessional at best, illegal at worst."

87. Plaintiff's response opposed what she reasonably believed was disability discrimination and an unlawful hiring process.

88. Plaintiff would have started work on March 17, 2025, but for CHSPSC's conduct.

89. The Technical Product Analyst role was a fully remote desk job that Plaintiff would have performed from home.

90. Plaintiff was not seeking permission to possess or consume cannabis on CHSPSC property.

91. Plaintiff was not seeking permission to consume cannabis during work hours.

92. Plaintiff was not seeking permission to work while impaired.

93. Plaintiff uses medical cannabis in the evening before bed and would not have been under the influence during her workday.

94. Plaintiff had used medical cannabis for approximately ten years while performing her work without incident.

95. CHSPSC did not identify any essential function of the Technical Product Analyst position that Plaintiff could not perform because of her disability, her treatment, or her requested accommodation.

96. Being able to produce a negative THC screen was not an essential function of the Technical Product Analyst position.

97. A presence-based screen for THC or THC metabolites can remain positive after any intoxicating effects have ended and does not establish that an applicant is impaired during working time.

98. CHSPSC could preserve a workplace rule against use or impairment during working time while treating a medically verified THC result as non-disqualifying.

99. Other reasonable options included excluding THC from Plaintiff's panel, accepting medical-provider verification, using a medical review process, requiring compliance with a no-workplace-use and no-impairment rule, or making another individualized modification that addressed both Plaintiff's medical needs and any legitimate business concern.

100. The requested accommodation would have imposed little or no cost and would not have fundamentally altered the Technical Product Analyst position or CHSPSC's operations.

101. Plaintiff's request did not pose a direct threat or an undue hardship.

102. CHSPSC never engaged in a good-faith, individualized interactive process concerning Plaintiff's request.

103. Instead, CHSPSC applied a categorical rule that any anticipated positive result for THC would prevent Plaintiff from being hired, without regard to medical authorization, off-duty timing, lack of impairment, or the non-safety-sensitive nature of the job.

104. The MHRA defines discrimination to include failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified applicant, denying employment because an applicant needs an accommodation, using standards or methods that have a discriminatory effect, and using qualification standards or employment tests that screen out a protected individual or class unless job-related and consistent with business necessity.

105. CHSPSC's actions meet each of these definitions of unlawful discrimination.

106. The MHRA's drug-related exclusion is limited to an employee that asserts that their impairment and/or disability is a "psychoactive substance use disorder resulting from current illegal use of drugs." 5 M.R.S. § 4553-A(3)(C). Plaintiff has no such disorder and does not rely on drug use as the impairment establishing disability.

107. Unlike the Americans with Disabilities Act provision concerning a current illegal drug user, 42 U.S.C. § 12114(a), the MHRA does not categorically remove every person who currently uses a federally controlled substance from the definition of a qualified individual with a disability when an employer acts on the basis of that use.

108. The New Hampshire Supreme Court has held, under an analogous state disability-discrimination statute, that a request to make an exception for off-duty therapeutic cannabis use is not categorically unreasonable and must be evaluated on the facts. *Paine v. Ride-Away, Inc.,* 174 N.H. 757, 274 A.3d 554 (2022).

109. The rationale of *Paine* applies with particular force under the MHRA because Plaintiff's disabling condition is separate from her cannabis use and the MHRA's drug-related exclusion concerns a particular type of excluded disorder, not a blanket exclusion from statutory protection.

110. Granting Plaintiff's requested accommodation would not have required CHSPSC to possess, manufacture, distribute, prescribe, or use cannabis, or to violate any federal substance use testing mandate.

111. No federal law required CHSPSC to disqualify Plaintiff from the fully remote Technical Product Analyst position because of her medically authorized, off-duty cannabis use.

112. Maine law authorizes employers to prohibit cannabis use and impairment in the workplace. Plaintiff's requested accommodation was fully consistent with such a prohibition because she sought only an exception for medically authorized, off-duty use and a non-disqualifying THC result.

113. The Maine Medical Use of Cannabis Act provides that a person whose conduct is authorized under that Act may not be denied a right or privilege for lawfully engaging in authorized medical-cannabis conduct.22 M.R.S. § 2430-C(1) The MMUCA separately prohibits an employer from refusing to employ or otherwise penalizing a person solely because of that person's status as a qualifying patient, subject to stated federal-law and funding limitations.22 M.R.S. § 2430-C(3)

114. Upon information and belief, employing Plaintiff in the Technical Product Analyst position would not have put CHSPSC in violation of federal law or caused CHSPSC to lose a federal contract or federal funding.

115. CHSPSC's stated reliance on a "drug-free workplace" did not relieve it of the obligation to assess Plaintiff's actual request under the MHRA.

116. At the time CHSPSC required Plaintiff to submit to a drug screen, Maine law prohibited an employer from requiring, requesting, or suggesting that an applicant submit to a substance use test except in strict compliance with SUTA.

117. SUTA required a covered employer to establish a written substance use testing policy, obtain approval of the final policy from the Maine Department of Labor, and refrain from implementing the policy or conducting testing until approval.

118. SUTA also required an employer to provide an applicant with a copy of the approved written policy before the test.

119. CHSPSC did not provide Plaintiff with a copy of any Maine-approved substance use testing policy before requiring her to test.

120. Upon information and belief, neither CHSPSC nor Community Health Systems had an active Maine-approved substance use testing policy applicable to Plaintiff and the Technical Product Analyst position.

121. The Maine Department of Labor's published lists of employers with active approved policies for 2024 and 2025 do not identify CHSPSC or Community Health Systems.

122. The fact that CHSPSC initially directed Plaintiff to travel to a testing site in New Hampshire did not change the fact that CHSPSC was testing an applicant for a job whose usual place of employment would be Maine.

123. Furthermore, prior to reversing course, CHSPSC had identified two testing locations in Maine that were substantially closer than the New Hampshire site and Plaintiff would have completed testing in Maine if CHSPSC had not reversed course.

124. CHSPSC repeatedly required or attempted to require Plaintiff to test by setting a deadline, changing the deadline, changing the location, and conditioning the Maine job on compliance.

125. SUTA prohibits any employer from requiring, requesting or suggesting that an employee or applicant submit to a substance use test except in compliance with SUTA. 26 M.R.S. § 683.

126. CHSPSC violated 26 M.R.S. § 683 when it required Plaintiff to undergo a substance use test despite failing to comply with multiple requirements of SUTA including; 1) failing to comply with the requirement that an employer have an employee assistance program in place; 2) failing to comply with the requirement that an employer develop a written policy as set out in SUTA "before establishing any substance use testing program"; 3) failing to comply with the requirement that the employer submit their proposed written policy to the Maine Department of Labor and refrain from implementing their substance use testing program until the policy is approved by the Maine Department of Labor.

127. SUTA provides that any employer who violates SUTA is liable to an employee subjected to discipline or discharge based on that violation. 26 M.R.S. § 683(1)

128. SUTA provides that any use of a positive result or refusal is subject to the limitations of the MHRA and other law. 26 M.R.S. § 685(2).

129. Plaintiff's claims are supported by direct evidence, probative timing, pretext, and discriminatory animus.

130. CHSPSC terminated Plaintiff in connection with its unlawful substance use testing in violation of SUTA.

131. CHSPSC's conduct deprived Plaintiff of a $75,000-per-year position, compensation, benefits, experience, and career opportunities.

132. Plaintiff has suffered and continues to suffer lost wages, lost benefits, loss of future earnings and earning capacity, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

133. Plaintiff has exercised reasonable diligence to mitigate her damages.

134. CHSPSC acted intentionally and, after consultation with its legal department, with malice or reckless indifference to Plaintiff's rights under the MHRA and SUTA.

135. CHSPSC's immediate refusal to consider documentation or any individualized accommodation, coupled with its false claim that Plaintiff rescinded or refused testing, supports an award of punitive damages and appropriate equitable relief.

ADDITIONAL FACTS RELEVANT TO PERSONAL JURISDICTION IN MAINE

136. This matter arises in the context of CHSPSC’s efforts to conduct business in Maine and, as set out in more detail below, to hire Maine employees.

137. CHSPSC took steps to hire Plaintiff with knowledge that she was a Maine resident who would be performing her work in Maine and interviewed Plaintiff while she was in Maine and offered her employment, which she accepted, while she was in Maine.

138. CHSPSC’s employment offer letter contemplated that Plaintiff would work in Maine and only work in Maine unless CHSPSC approved work elsewhere, stating, “A material relocation of your residence and/or relocation to another state without advance written approval by your Vice President and Human Resources may cause the employment to be ended by the Company.”

139. CHSPSC viewed Plaintiff’s location in Maine and status as a Maine based employee a positive factor for the company which is corroborated by the letter language.

140. CHSPSC then initiated the onboarding process for Plaintiff as a new employee while she was located in Maine.

141. CHSPSC would have sent office equipment, including a computer and other technology, to Plaintiff in Maine for her use in Maine so that she could establish a working office.

142. CHSPSC directed Plaintiff to undergo a substance use test while Plaintiff was located in Maine.

143. Maine's SUTA was passed to, among other things, "Protect the privacy rights of individual employees in the State [of Maine] from undue invasion by employers through the use of substance use tests" and to "Ensure that, when substance use tests are used, proper test procedures are employed to protect the privacy rights of employees and applicants". 26 M.R.S. § 681(1)(A)&(B).

144. CHSPSC's directive to Plaintiff to undergo a substance use test implicated and invaded Plaintiff's privacy and bodily integrity.

145. CHSPSC's directive to Plaintiff to undergo a substance use test failed to comply with and blatantly violated SUTA.

146. Plaintiff has found medical cannabis to be a very effective medication and treatment for her chronic pain and Maine law recognizes medical cannabis as an appropriate and legal medication and treatment.

147. Maine law also establishes that the use of medical cannabis as a treatment is a protected right for residents and employees in the State of Maine. The MMUCA provides that a person whose conduct is authorized under that Act may not be denied a right or privilege for lawfully engaging in authorized medical-cannabis conduct. 22 M.R.S. § 2430-C(1). The MMUCA separately prohibits an employer from refusing to employ or otherwise penalizing a person solely because of that person's status as a qualifying patient, subject to stated federal-law and funding limitations.22 M.R.S. § 2430-C(3).

148. Plaintiff's doctor supports Plaintiff's use of medical cannabis as a treatment for her chronic pain.

149. CHSPSC attempted to dictate to a Maine resident and Maine employee what medication and medical treatment she could and could not use while residing and working in Maine.

150. CHSPSC directed and attempted to coerce Plaintiff to disregard the advice of her Maine physician.

151. If Plaintiff had demurred regarding CHSPSC's directive regarding her medical treatment she would have needed to begin an alternative treatment for her chronic pain such fentanyl patches, OxyContin, morphine, and/or muscle relaxants.

152. As set out above, Plaintiff had used these medications in the past and found that they were not effective and came with substantial negative side effects. In this way, if Plaintiff had accepted CHSPSC's directive to cease use of medical cannabis she would have suffered the adverse physical, emotional and mental impacts of these powerful drugs.

153. The adverse impacts of opioid use often expand beyond the person using the medications to family, friends, and the greater community.

154. The Maine Legislature has recognized that opiate abuse is an emergency in the State, and that opiate abuse has "been steadily increasing in Maine and [is] reaching epidemic proportions" and requires "a comprehensive approach". P.L. 2015, ch. 378, emergency preamble.

155. CHSPSC's directive to Plaintiff that she could only work for CHSPSC if she ceased use of medical cannabis and obtained a negative result for THC on a test was inconsistent with and undercut the efforts in Maine to address and reduce the opioid epidemic in the State of Maine.

156. CHSPSC's actions violated the MMUCA Maine's SUTA, and the MHRA.

157. CHSPSC communicated its unlawful acts to its Maine employee while she was in Maine. This, in itself, creates a reasonable expectation that Plaintiff would seek to

vindicate her state and federal rights in her home forum. *Pelchat v. Sterilite Corp.,* 931 F. Supp. 939, 945–46 (D.N.H. 1996)

158. CHSPSC's discrimination against a Maine employee with a disability has led to adverse impacts for Plaintiff and those around her.

159. CHSPSC's unlawful actions in this case have caused substantial economic and non-economic harm to Plaintiff and her family where Plaintiff has been unable to secure other employment since her termination by CHSPSC.

160. CHSPSC has also employed another Maine employee before, during, and after Plaintiff's employment and, with respect to the other employee, had the employee perform work from Maine on a daily basis as well as communicate with the other employee on a daily basis by phone and other mediums.

161. On information and belief, CHSPSC provided this other employee with a computer and other office equipment to permit them to use the equipment to perform work for CHSPSC and establish an office at their location in Maine.

162. In short, CHSPSC has purposely availed itself of the privilege of conducting activities in Maine by selecting a Maine employee for hire, hiring her with the understanding that she would not perform work outside of Maine without CHSPSC's consent, intentionally violating a Maine employee's rights to privacy, bodily integrity, patient-physician relationship, choice of medical treatment, and in the process blatantly violating Maine laws that were passed to protect Maine residents, Maine employees with disabilities, and the Maine community at large.

163. It was reasonably foreseeable to CHSPSC that engaging in these actions which had a substantial adverse impact on Plaintiff and others in the State of Maine could lead to liability under the Maine laws it violated and litigating in a Maine court.

164. CHSPSC's intentional involvement in Maine forms the entire basis for Plaintiff's claims in this matter and therefore there is complete relatedness between CHSPSC's Maine contacts and the Plaintiff's claims.

165. It is imminently fair and reasonable for CHSPSC to be subject to suit in Maine court.

166. Further, the facts set out above reflect that CHSPSC has maintained a relation to persons in the State of Maine which affords a basis for the exercise of jurisdiction by Maine courts that is consistent with the U.S. Constitution.

COUNT I: MHRA - FAILURE TO PROVIDE REASONABLE ACCOMMODATION

167. Paragraphs 1 through 166 are incorporated by reference.

168. Plaintiff is an otherwise qualified individual with a disability under the MHRA.

169. CHSPSC knew of Plaintiff's disability and of her disability-related need for a modification of its negative-THC testing requirement.

170. Plaintiff requested a reasonable accommodation by asking CHSPSC to treat a medically explained THC result as non-disqualifying, or otherwise to modify its testing rule so that she could continue effective, off-duty treatment without losing the job.

171. The requested accommodation was reasonable on its face and in the circumstances of a fully remote desk job, would not have permitted workplace use or impairment, and would not have imposed undue hardship.

172. CHSPSC refused the requested accommodation categorically and failed to consider any effective alternative.

173. CHSPSC also denied Plaintiff the opportunity to begin employment because she needed and requested accommodation and terminated Plaintiff because she requested and required reasonable accommodation.

174. CHSPSC's conduct constitutes disability discrimination in violation of 5 M.R.S. §§ 4553(2)(E)-(F) and 4572.

175. As a direct and proximate result, Plaintiff suffered the damages alleged above.

COUNT II: MHRA - DISABILITY DISCRIMINATION AND FAILURE TO HIRE

176. Paragraphs 1 through 175 are incorporated by reference.

177. CHSPSC offered Plaintiff the Technical Product Analyst position after determining that she was qualified.

178. After Plaintiff disclosed her disability, explained her disability-related medication, and requested accommodation, CHSPSC stated that she would not be hired if her test reflected THC from medical cannabis.

179. CHSPSC then ended the hiring process, withdrew previously offered testing arrangements, and falsely characterized Plaintiff as having rescinded or refused testing.

180. But for Plaintiff's disability, her disability-related use of medical cannabis, and her need for accommodation, CHSPSC would have allowed her to complete onboarding and begin work on March 17, 2025.

181. CHSPSC's proffered assertion that Plaintiff voluntarily rescinded or refused testing is false and is pretext for disability discrimination.

182. CHSPSC failed or refused to hire Plaintiff because of physical or mental disability in violation of 5 M.R.S. § 4572.

183. CHSPSC acted intentionally and with malice or reckless indifference to Plaintiff's rights.

184. As a direct and proximate result, Plaintiff suffered the damages alleged above.

COUNT III: MHRA - UNLAWFUL EMPLOYMENT TEST, QUALIFICATION STANDARD, AND SELECTION CRITERION

185. Paragraphs 1 through 184 are incorporated by reference.

186. CHSPSC used a negative-THC requirement as an employment test, qualification standard, and selection criterion for the Technical Product Analyst position.

187. That requirement screened out or tended to screen out Plaintiff and a class of applicants with disabilities who use medically authorized cannabis to treat disability-related symptoms.

188. The requirement did not measure present impairment, ability to perform an essential function, or any job-related limitation.

189. As applied to Plaintiff's fully remote desk position and medically explained, off-duty use, a categorical negative-THC requirement was not job-related and consistent with business necessity.

190. Even if CHSPSC could establish a legitimate objective, that objective could have been achieved through less discriminatory alternatives, including medical verification and a rule against use or impairment during working time.

191. CHSPSC's use of the test and standard therefore constituted discrimination under 5 M.R.S. § 4553(2)(C), (G), and § 4572.

192. CHSPSC acted intentionally and with malice or reckless indifference to Plaintiff's rights.

193. As a direct and proximate result, Plaintiff suffered the damages alleged above.

COUNT IV: MHRA - RETALIATION AND INTERFERENCE

194. Paragraphs 1 through 193 are incorporated by reference.

195. Plaintiff engaged in activity protected by the MHRA when she requested reasonable accommodation for her disability.

196. Plaintiff also engaged in protected activity when she opposed CHSPSC's insistence that a medically explained THC result should bar her from employment and stated that the process appeared illegal.

197. CHSPSC knew of Plaintiff's protected activity.

198. Immediately after the protected activity, CHSPSC withdrew the extension and nearby testing option, demanded travel to New Hampshire on an accelerated deadline, announced that Plaintiff would not be hired if she continued her medical treatment, and ended the hiring process.

199. CHSPSC also interfered with Plaintiff's exercise and enjoyment of her MHRA rights by treating her accommodation request as a refusal to test or rescission of the offer.

200. The timing, changed treatment, direct statements, and false characterization of Plaintiff's conduct establishes a causal connection between her protected activity and CHSPSC's adverse actions.

201. CHSPSC's conduct violated 5 M.R.S. §§ 4572(1) and 4633.

202. CHSPSC acted intentionally and with malice or reckless indifference to Plaintiff's rights.

203. As a direct and proximate result, Plaintiff suffered the damages alleged above.

## COUNT V: MAINE SUBSTANCE USE TESTING ACT

204. Paragraphs 1 through 203 are incorporated by reference.

205. Plaintiff was an employee within the meaning of 26 M.R.S. § 682(1), and CHSPSC was an employer within the meaning of 26 M.R.S. § 682(3).

206. The drug screen CHSPSC required was a substance use test within the meaning of SUTA.

207. CHSPSC was prohibited from requiring, requesting, or suggesting that Plaintiff submit to the test except in strict compliance with 26 M.R.S. §§ 683-686.

208. CHSPSC violated SUTA by requiring and repeatedly attempting to require Plaintiff to submit to a substance use test without first establishing and obtaining Maine Department of Labor approval of a written policy applicable to Plaintiff.

209. CHSPSC violated SUTA by failing to provide Plaintiff with a copy of an approved written policy before the proposed test.

210. CHSPSC violated SUTA by conditioning Plaintiff's hire on compliance with a testing demand that did not comply with SUTA.

211. CHSPSC violated SUTA by using Plaintiff's anticipated medically explained result and alleged refusal to submit to an unlawful testing demand to deny her employment, contrary to 26 M.R.S. § 685 and the MHRA.

212. CHSPSC is subject to the civil penalty authorized by 26 M.R.S. § 689(3) for requiring or repeatedly attempting to require an applicant to submit to a substance use test under conditions that would not justify the test under SUTA, together with enforcement under § 689(4) and any other relief the Court determines available.

213. Plaintiff further pleads in the alternative that, to the extent her accepted offer, onboarding, and assigned start date rendered her an employee for purposes of any portion of SUTA, CHSPSC disciplined or discharged her for conduct connected to an unlawful test and is also liable for the remedies authorized by 26 M.R.S. § 689(1), including reinstatement, treble lost wages, costs, and reasonable attorney's fees.

214. As a direct and proximate result, Plaintiff suffered the damages alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

A. Declare that CHSPSC violated Plaintiff's rights under the MHRA and SUTA;

B. Permanently enjoin CHSPSC, its agents, successors, employees, and persons acting in concert with it from continuing to discriminate or retaliate against Plaintiff and from using substance use testing practices that violate Maine law;

C. Enjoin CHSPSC from categorically refusing to consider reasonable accommodations for applicants or employees who use medically authorized cannabis off duty to treat a disability;

D. Enjoin CHSPSC from requiring Maine applicants to submit to substance use testing without a written policy approved by the Maine Department of Labor and full compliance with 26 M.R.S. §§ 681-690;

E. Order CHSPSC to employ Plaintiff in the Technical Product Analyst position or a substantially equivalent position, or award front pay in lieu of such equitable relief;

F. Award back pay, lost benefits, and prejudgment interest;

G. Award lost future earnings and other appropriate equitable monetary relief;

H. Award compensatory damages in an amount to be determined at trial;

I. Award punitive damages in an amount permitted by law;

J. Award nominal damages;

K. Award the statutory penalties and other relief available under 26 M.R.S. § 689, including treble lost wages and reinstatement to the extent the Court determines those remedies apply;

L. Award reasonable attorneys' fees, litigation expenses, and costs under the MHRA, SUTA, and other applicable law;

M. Award prejudgment and post-judgment interest;

N. Order CHSPSC to correct its records to reflect that Plaintiff did not voluntarily rescind her acceptance or refuse to submit to lawful testing;

O. Order CHSPSC to adopt lawful accommodation and substance use testing policies and to train relevant Human Resources and management personnel; and

P. Grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: September 2, 2026

Respectfully submitted,

**JACQUELYN FLYNN**
By her attorneys,

/s/ Chad T. Hansen
Chad T. Hansen, Esq., Maine Bar No. 9489
**EMPLOYEE RIGHTS GROUP**
92 Exchange Street, 2nd Floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343
chad@employeerightslaw.attorney